IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

ERIC LEE PROSHA,

    Plaintiff,

        v.                                   Civil Action No. 3:22cv183

LT. COLEMAN, *et al.*,

    Defendants.

## MEMORANDUM OPINION

Eric Lee Prosha, a Virginia inmate proceeding *pro se*, filed this 42 U.S.C. § 1983 action.[1] The action proceeds on Prosha's Complaint. (ECF No. 1.) As pertinent here, Prosha contends that Lt. Coleman repeatedly denied Prosha's request for a bottom bunk. (ECF No. 1-2, at 2.) Thereafter, on June 4, 2021, Prosha fell when climbing down from his top bunk when his foot gave out. (ECF No. 1-2, at 2.) Prosha contends that Lt. Coleman's actions amounted to deliberate indifference in violation of the Eighth Amendment.[2] (ECF No. 1, at 4.) Lt. Coleman has moved for summary judgement on the grounds that, *inter alia*, Prosha failed to exhaust his administrative remedies. Lt. Coleman provided Prosha with appropriate *Roseboro*[3] notice, but

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system to the parties' submissions. The Court corrects the spelling, punctuation, and capitalization and omits excessive emphasis in quotations from the parties' submissions. The Court omits any secondary citations in the quotations from the parties' submissions.

[2] "Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const. amend. VIII.

[3] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975).

Prosha has not responded.  For the reasons set forth below, the Motion for Summary Judgment
(ECF No. 21) will be GRANTED.[4]

## I.  Summary Judgment Standard

Summary judgment must be rendered "if the movant shows that there is no genuine
dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.
R. Civ. P. 56(a).  The party seeking summary judgment bears the responsibility to inform the
court of the basis for the motion, and to identify the parts of the record which demonstrate the
absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323
(1986).  "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive
issue, a summary judgment motion may properly be made in reliance solely on the pleadings,
depositions, answers to interrogatories, and admissions on file." *Id.* at 324 (internal quotation
marks omitted).  When the motion is properly supported, the nonmoving party must go beyond
the pleadings and, by citing affidavits or "depositions, answers to interrogatories, and admissions
on file,' designate 'specific facts showing that there is a genuine issue for trial." *Id.* (quoting
former Fed. R. Civ. P. 56(c) and 56(e) (1986)).

In reviewing a summary judgment motion, the court "must draw all justifiable inferences
in favor of the nonmoving party." *United States v. Carolina Transformer Co.*, 978 F.2d 832, 835
(4th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).  However, a
mere scintilla of evidence will not preclude summary judgment. *Anderson*, 477 U.S. at 251
(citing *Improvement Co. v. Munson*, 81 U.S. 442, 448 (1872)).  "[T]here is a preliminary
question for the judge, not whether there is literally no evidence, but whether there is any upon

---

[4] By Memorandum Opinion and Order entered on January 12, 2023, the Court dismissed
Prosha's claims against the other defendants for failure to effect timely service of process.  (ECF
Nos. 28, 29.)

which a jury could properly proceed to find a verdict for the party . . . upon whom the onus of proof is imposed." *Id.* (quoting *Munson*, 81 U.S. at 448). Additionally, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment." *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quoting *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915 n.7 (5th Cir. 1992)); *see* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials . . . .").

Lt. Coleman asks the Court to dismiss Prosha's claim against him because Prosha failed to exhaust his administrative remedies as required by 42 U.S.C. § 1997e(a). Because the exhaustion of administrative remedies is an affirmative defense, Lt. Coleman bears the burden of pleading and proving lack of exhaustion. *Jones v. Bock*, 549 U.S. 199, 216 (2007). As pertinent here, Lt. Coleman submitted: (1) the affidavit of E. Witt, the Institutional Ombudsman at Greensville Correctional Center ("GCC"), (ECF No. 22-1, at 1–6); (2) a copy of Operating Procedure 866.1–Offender Grievance Procedure, ("Operating Procedure 866.1," ECF No. 22-1, at 7–22); and, (3) a copy of Prosha's grievance related documents, (ECF No. 22-1, at 23–55).

Prosha swore to the contents of his Complaint under penalty of perjury. (ECF No. 1, at 6.) Prosha attached to his Complaint some of his grievance material related to his claims. (ECF No. 1-3.)

Additionally, by Memorandum Order entered on July 26, 2023, the Court directed Lt. Coleman to provide the Court with copies of the prison staff's responses to Prosha's *Written Complaints* with fourteen (14) days of the date of entry thereof. (ECF No. 30.) The Court directed Prosha to provide any further response to those submissions within twenty-four (24) days of the date of entry thereof. Lt. Coleman filed his response on August 9, 2023. (ECF No. 31.) Prosha has not filed a further response.

3

In light of the foregoing principles and submissions, the following facts are established for the purposes of the pending Motion for Summary Judgment. All permissible inferences are drawn in favor of Prosha.

## II.  Relevant Facts

### A.  Prosha's Injury

On June 4, 2021, Prosha fell while exiting his top bunk. (ECF No. 1 ¶ 7.) Lt. Coleman previously had refused Prosha's request for a bottom bunk pass. (ECF No. 1-2 ¶ 4.)

### B.  Grievance Procedure at the Virginia Department of Corrections ("VDOC")

Operating Procedure § 866.1 requires that, before submitting a Regular Grievance, the inmate must demonstrate that he or she attempted to resolve the issue through the informal complaint process. (*See* ECF No. 22-1, at 10.) "The first step in in the informal complaint process is for the offender to discuss their issue with staff for a quick resolution." (ECF No. 22-1, at 10.) If the issue is not resolved verbally, the offender should submit a *Written Complaint.* (*See* ECF No. 22-1, at 10.) Prison staff have fifteen days from receipt of the *Written Complaint* to provide an appropriate written response. (*See* ECF No. 22-1, at 11.) The *Written Complaint* provides a space for prison staff to detail the "Action Taken/Response" to the offender's complaint. (*See* ECF No. 22-1, at 25.) "If the issue on the *Written Complaint* is not resolved to the satisfaction of the offender, or staff fail to provide a written response within 15 days, the offender may file a *Regular Grievance* . . . . The *Regular Grievance* must be placed in the Grievance Mailbox within 30 days of the original incident unless a more restrictive timeframe applies." (ECF No. 22-1, at 10.)

4

Certain supporting documents must be filed with the *Regular Grievance*, including the *Written Complaint*. (*See* ECF No. 22-1, at 14.) The issue on the *Regular Grievance*, must "[a]ffect the offender personally [and] [b]e identical to and limited to the issue submitted on the *Written Complaint*." (ECF No. 22-1, at 13.) The *Regular Grievance* form requires the offender to attach the "**Results of the Informal Complaint Process**." (*See* ECF No. 22-1, at 35.)[5]

### 1. Grievance Intake Procedure

Prior to review of the substance of a grievance, prison officials conduct an "intake" review of the grievance to assure that it meets the published criteria for acceptance. (*See* ECF No. 22-1, at 14.) For example, as pertinent here, the offender must attach a copy of the *Written Complaint*, with, if action was taken, the prison staff's response to the *Regular Grievance*. (ECF No. 22-1, at 23–24.)[6] "If the *Regular Grievance* does not meet the intake criteria, staff has two working days from receipt to complete the *Intake* section of the *Regular Grievance* [form], indicating the reason for rejection, and to return the *Regular Grievance* to the offender." (ECF No. 22-1, at 14.) "If the offender disagrees with the intake decision, the offender has five days to appeal the decision." (ECF No. 22-1, at 14.)

### 2. Grievance Review

If the grievance is accepted, within two working days, prison "staff must print and provide the *Grievance Receipt* to the offender as notification of acceptance." (ECF No. 22-1, at 14.) Once the grievance is accepted for review, the Institutional Ombudsman determines the proper course of investigation. (*See* ECF No. 22-1, at 14–15.) "Within 30 days of issuance of

---

[5] As explained below, Prosha repeatedly failed to attach the results of the informal complaint process to the *Regular Grievance*.

[6] The *Regular Grievance* form reemphasizes that the issue on the form must be "the exact same issued addressed through the informal process." (ECF No. 22-1, at 23.)

the *Grievance Receipt*, each accepted grievance must be investigated, reviewed, completed, and the *Offender Grievance Response – Level I* returned to the offender unless a continuance is authorized." (ECF No. 22-1, at 16.)

### 3. Grievance Appeals

"The *Offender Grievance Response – Level I* includes a section for the offender to appeal their grievance response." (ECF No. 22-1, at 17.) The appeal must be submitted within five days of receive the *Offender Grievance Response.* (*See* ECF No. 22-1, at 17.) Depending on the issue in the grievance, the appeal is addressed by the Director of Offender Management Services, the Health Services Director, the Superintendent for Education, the Chief of Corrections Operations, or the Regional Administrator. (*See* ECF No. 22-1, at 17–18.)

"The exhaustion requirement is met only when a *Regular Grievance* has been accepted into the grievance process and appealed without satisfactory resolution." (ECF No. 22-1, at 18.)

### C. Prosha's Pertinent Efforts at Exhaustion with Respect to His Present Claim

In the weeks after his fall from his bunk, on various dates, Prosha filed eleven separate *Written Complaints* that were somewhat related to his fall from his bunk. Thereafter, all at once, on July 1, 2021, he filed eleven grievances that were somewhat related to his fall from his bunk. Although required to do so, in no instance did Prosha attach to his grievances the corresponding *Written Complaint*, **with the prison staff's response**. Given Prosha's disjointed attempts at exhaustion, the Court organizes his efforts by the date prison staff received his *Written Complaint*.

### 1. The First June 8, 2021 *Written Complaint* and Related *Regular Grievance*

On June 8, 2021, prison staff received a *Written Complaint* from Prosha, directed to Lt. Coleman, wherein Prosha complained that he had previously requested a bottom bunk from Lt.

6

Coleman and been turned down. (ECF No. 22-1, at 25.) Prosha stated he now had fallen and

needed a permanent bottom bunk pass. (ECF No. 22-1, at 25.)

On June 16, 2021, Lt. Coleman timely responded on the *Written Complaint*: "In response

to the above written complaint you was move[d] to the bottom [bunk] when you received a

bottom bunk pass from the S-2 Medical Department." (ECF No. 31-1, at 3.)

Thereafter, on July 1, 2021, prison staff received a *Regular Grievance* from Prosha,

wherein he repeated his complaint that he was denied a bottom bunk by Lt. Coleman, he

subsequently fell, and was injured. (ECF No. 22-1, at 23.) Prosha demanded compensation.

(ECF No. 22-1, at 23.)

On July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake

because Prosha failed to attach the copy of his *Written Complaint* -- with Lt. Coleman's response

-- to the *Regular Grievance*.[7]  (ECF No. 22-1, at 24.)

### 2. Second June 8, 2021 *Written Complaint* and Related *Regular Grievance*

On June 8, 2021, prison staff received a *Written Complaint* from Prosha, directed to St.

Lewis, wherein Prosha stated:

> I fell off the top bunk this morning and it took you 35 minutes to sign my
> Emergency Grievance and then it took 3 hours before they called me to medical. I
> had come to see you in order for you to find out if they (medical) will call me over.
> I need a copy of my Emergency Grievance. Thank you! Log# 201666

(ECF No. 22-1, at 31.)

---

[7] Prosha attached a copy of his unanswered *Written Complaint* to the *Regular Grievance*. (ECF No. 22-1, at 25.) The Institutional Ombudsman indicated that staff had sent Prosha a response to the *Written Complaint* on June 21, 2021. (*Id.* at 24.) The response to the *Written Complaint* is dated June 16, 2021, but does not indicate the date it was sent to Prosha. (ECF No. 31-1, at 3.)

Lt. Coleman timely responded on the *Written Complaint* and stated: "In response for the above written complaint, when a[n] emergency grievance [sic] your complaint for grievance have got 8 (eight) hour[s] to respond which was approved for bottom bunk pass and you move[d] to same day to cell 308-B." (ECF No. 31-1, at 5.)

On July 1, 2021, prison staff received a *Regular Grievance* from Prosha wherein he complained about the delay in providing him medical care after he fell from his bunk. (ECF No. 22-1, at 29.) Prosha demanded compensation. (ECF No. 22-1, at 29.)

On July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake because Prosha failed to attach the copy of his *Written Complaint* -- with the prison staff's response -- to the *Regular Grievance.*[8] (ECF No. 22-1, at 30.)

### 3.  Third June 8, 2021 *Written Complaint* and Related *Regular Grievance*

On June 8, 2021, prison staff received a *Written Complaint* from Prosha, directed to the Medical Department. (ECF No. 22-1, at 34.) Prosha stated, "I definitely need a permanent bottom bunk pass, I fell off my bunk this morning and internally bruised my left side. I can't climb up and down that ladder because of my physic medicine I take every day. Thank you!" (ECF No. 22-1, at 34.)

Prison staff timely responded on the *Written Complaint* and stated: "Will assign to provider sick call." (ECF No. 31-1, at 7.)

---

[8] Prosha attached a copy of his unanswered *Written Complaint* to the *Regular Grievance.* (ECF No. 22-1, at 31.) The Institutional Ombudsman indicated that staff had "sent" the response to Prosha on June 17, 2021. (ECF No. 22-1, at 30.) The response to the Written Complaint is not dated and does not indicate the date it was sent to Prosha. (ECF No. 31-1, at 5.)

On July 1, 2021, prison staff received a *Regular Grievance* from Prosha, wherein he questioned why it took "medical 3 hours to call me over there" and stated that he needed to see an outside physician. (ECF No. 22-1, at 32.)

On July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake because Prosha failed to attach the copy of his *Written Complaint* -- with prison staff's response -- to the Regular Grievance. (ECF No. 22-1, at 33.)[9]

### 4. **Fourth June 8, 2021 *Written Complaint* and Related *Regular Grievance***

On June 8, 2021, prison staff received a *Written Complaint* from Prosha, directed to the Medical Department, wherein Prosha questioned "why did it medical take 3 hours to call me over there" and stated he needed to see an outside physician. (ECF No. 22-1, at 40.)  Prison staff timely responded on the *Written Complaint* and stated, "Medical has eight hours to answer a[n] emergency grievance." (ECF No. 31-1, at 6.)

On July 1, 2021, prison staff received a *Regular Grievance* from Prosha wherein he stated that he fell from his bunk and he had plantar fasciitis. (ECF No. 22-1, at 38.)  Prosha stated he need pain pills and boots. (ECF No. 22-1, at 38.)

On July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake because Prosha failed to attach the copy of his *Written Complaint* -- with the prison staff's response -- to the Regular Grievance.[10] (ECF No. 22-1, at 39.)

---

[9] Prosha attached a copy of his unanswered *Written Complaint* to the *Regular Grievance*. (ECF No. 22-1, at 34.) The Institutional Ombudsman indicated that staff had "sent" the response to Prosha on June 23, 2021. (ECF No. 22-1, at 33.) The response to the *Written Complaint* is dated June 14, 2021, but does not indicate the date it was sent to Prosha. (ECF No. 31-1, at 7.)

[10] Prosha attached a copy of his unanswered *Written Complaint* to the *Regular Grievance*. (ECF No. 22-1, at 40.) The Institutional Ombudsman indicated that staff "sent" Prosha a response to the *Written Complaint* on June 23, 2021. (ECF No. 22-1, at 39.) The response to the *Written Complaint* is dated June 14, 2021, but does not indicate the date it was sent to Prosha. (ECF No. 31-1, at 8.)

### 5. **June 14, 2021 *Written Complaint* and related *Regular Grievance***

On June 14, 2021, prison staff received a *Written Complaint* from Prosha, directed to the Medical Department, wherein Prosha stated that he fell from his bunk. (ECF No. 22-1, at 49.) Prosha then went on to complain about his feet and his need for insoles and boots as soon as possible. (ECF No. 22-1, at 49.)

Prison staff timely responded on the *Written Complaint* and stated: "Schedule[d] to see provider on 6-23-21." (ECF No. 31-1, at 8.)

Thereafter, on July 1, 2021, prison staff received a *Regular Grievance* from Prosha wherein he questioned why a bottom bunk pass was not issued before he had his fall. (ECF No. 22-1, at 47.) Prosha stated that he was flat-footed and Dr. Adams had recommended that Prosha "see the orthopedic doctor and get sized up for insoles and boots to wear." (ECF No. 22-1, at 47.)

On July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake because it was deemed to be a request for services.[11] (ECF No. 22-1, at 48.) The Institutional Ombudsman directed Prosha to "submit sick call to inquire about bunk pass." (ECF No. 22-1, at 48.)

### 6. **First June 15, 2021 *Written Complaint* and related *Regular Grievance***

On June 15, 2021, prison staff received another *Written Complaint* from Prosha, directed to Lt. Coleman, wherein Prosha complained that several other inmates in his building had a bottom bunk even though they did not have a bottom bunk pass. (ECF No. 22-1, at 28.)

---

[11] Prosha attached a copy of his unanswered *Written Complaint* to the *Regular Grievance*. (ECF No. 22-1, at 46.) The Institutional Ombudsman indicated that staff had "sent" the response to Prosha on June 23, 2021. (ECF No. 22-1, at 39.) The response to the Written Complaint is dated June 22, 2021, but does not indicate the date it was sent to Prosha. (ECF No. 31-1, at 12.)

J. Everette timely responded on the *Written Complaint* on June 21, 2021. (ECF No. 31-1, at 4.)

Everette stated:

> Discussed the written complaint with inmate Prosha in my office on June 21, 2021. Inmate explained his problem(s) he was having with getting a bottom bunk and discussed ways to resolve the issue. The concern of the inmate was brought to the attention of staff members long before it became a written complaint. Inmate Prosha mentioned he was moved into a cell and was assigned the bottom bunk. Actually, this move was made at the same time he fell off his top bunk (as inmate states) and had to go to medical. So this issue was addressed by Lt. Coleman.

(ECF No. 31-1, at 4.)

Thereafter, on July 1, 2021, Prosha received a *Regular Grievance* from Prosha wherein

he repeated his complaint that he was denied a bottom bunk by Lt. Coleman. (ECF No. 22-1, at

26.) Prosha demanded compensation. (ECF No. 22-1, at 26.)

On July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake

because Prosha failed to attach the copy of his *Written Complaint* -- with the prison staff's June

21, 2021 response -- to the Regular Grievance.[12] (ECF No. 22-1, at 27.)

### 7. **Second June 15, 2021 *Written Complaint* and Related *Regular Grievance***

On June 15, 2021, prison staff received *Written Complaint* from Prosha, directed to the

Medical Department, wherein Prosha asked, "Why wasn't a bottom bunk pass issued to me way

before I had my accident (fall)." (ECF No. 22-1, at 43.) Prosha then went on to complain about

his flat feet and need for insoles and pain medication. (ECF No. 22-1, at 43.) Prison staff timely

---

[12] Prosha attached a copy of his unanswered *Written Complaint* to the *Regular Grievance*. (ECF No. 22-1, at 28.) The Institutional Ombudsman indicated that staff had "sent" the response to Prosha on June 21, 2021. (ECF No. 22-1, at 27.) The response to the Written Complaint is dated June 21, 2021 and apparently was provided to Prosha by Everette after the discussion in Everette's office. (ECF No. 31-1, at 4.)

responded on the *Written Complaint* and stated: "You can discuss with provider, you are scheduled." (ECF No. 31-1, at 11.)

Thereafter, on July 1, 2021, prison staff received a *Regular Grievance* from Prosha, wherein he asserted that because of his feet problems he "should not be climbing on the top rack, thus needing a permanent bottom bunk pass." (ECF No. 22-1, at 41.)

On July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake because it was deemed to be a request for services. (ECF No. 22-1, at 42.) The Institutional Ombudsman directed Prosha to "Submit request for sick call to inquire about bunk pass." (ECF No. 22-1, at 42.)

### 8. **Third June 15, 2021 *Written Complaint* and Related *Regular Grievance***

On June 15, 2021, prison staff received a *Written Complaint* from Prosha, directed to the Medical Department, wherein Prosha stated, "Now about a week after my injury to my left side, I feel hard areas . . . . I please need x-rays done to see what the problem really is." (ECF No. 22-1, at 46.) Prison staff timely responded to the *Written Complaint* and stated: "You are scheduled with the provider." (ECF No. 31-1, at 12.)

Thereafter, on July 1, 2021, prison staff received a *Regular Grievance* from Prosha wherein he repeated his need to have x-rays. (ECF No. 22-1, at 44.) On July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake because Prosha failed to attach the copy of his *Written Complaint* -- with prison staff's response -- to the Regular Grievance.[13] (ECF No. 22-1, at 45.)

---

[13] Prosha attached a copy of his unanswered *Written Complaint* to the *Regular Grievance*. (ECF No. 22-1, at 46.) The Institutional Ombudsman indicated that staff had "sent" the response to Prosha on June 23, 2021. (ECF No. 22-1, at 45.) The response to the *Written Complaint* is dated June 22, 2021, but does not indicate the date it was sent to Prosha. (ECF No. 31-1, at 12.)

### 9. **Fourth June 15, 2021 *Written Complaint* and Related *Regular Grievance***

On June 15, 2021, prison staff received a *Written Complaint* from Prosha, directed to the Medical Department, wherein Prosha stated, *inter alia*, "because of my feet problem, I should not be climbing on the top rack, thus needing a permanent bottom bunk pass." (ECF No. 22-1, at 52.)   Prison staff timely responded on the *Written Complaint* and stated: "You are scheduled to see provider." (ECF No. 31-1, at 9.)

Thereafter, on July 1, 2021, prison staff received a *Regular Grievance* from Prosha wherein he stated after his injury he felt "hard areas" and he needed to have x-rays. (ECF No. 22-1, at 50.) On July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake because Prosha failed to attach the copy of his *Written Complaint* -- with prison staff's response -- to the *Regular Grievance*.[14]  (ECF No. 22-1, at 45.)

### 10. **Fifth June 15, 2021 *Written Complaint* and Related *Regular Grievance***

On June 15, 2021, prison staff received a *Written Complaint* from Prosha, directed to the Medical Department, wherein Prosha stated, *inter alia*, "I have a big bruise on my left side inside and out. I need to have x-rays . . . ." (*See* ECF No. 22-1, at 55.)  Prison staff timely responded on the *Written Complaint* and stated: "You are scheduled to see the provider." (ECF No. 31-1 at 10.)

Thereafter, on July 1, 2021, prison staff received a *Regular Grievance* from Prosha wherein he stated that he was in pain and had no medication. (ECF No. 22-1, at 53.) On

---

[14] Prosha attached a copy of his unanswered *Written Complaint* to the *Regular Grievance*. (ECF No. 22-1, at 52.) The Institutional Ombudsman indicated that staff had "sent" the response to Prosha on June 23, 2021. (ECF No. 22-1, at 51.) The response to the *Written Complaint* is dated June 22, 2021, but does not indicate the date it was sent to Prosha. (ECF No. 31-1, at 9.)

July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake because Prosha failed to attach the copy of his *Written Complaint* -- with prison staff's June 29, 2021 response -- to the *Regular Grievance*.[15]  (ECF No. 22-1, at 54.)

### 11.  June 22, 2021 *Written Complaint* and Related *Regular Grievance*

On June 22, 2021, prison staff received a *Written Complaint* from Prosha, directed to the Medical Department, wherein Prosha complained that he was in pain and had no medication. (ECF No. 22-1, at 37.)  Prisoner staff timely responded on the *Written Complaint* and stated: "Mr. Prosha, you were seen on 6-23-2021 by the provider."  (ECF No. 31-1 at 13.)

On July 1, 2021, prison staff received a *Regular Grievance*, wherein he stated that he "definitely need[ed] a permanent bottom bunk pass" because he fell from his bunk.  (ECF No. 22-1, at 35.)

On July 1, 2021, the Institutional Ombudsman refused the *Regular Grievance* at intake because it deemed it to be a request for services and directed Prosha to "submit a sick call request."[16]  (ECF No. 22-1, at 36.)

In no instance did Prosha resubmit a rejected *Regular Grievance* with the proper documentation.

---

[15] Prosha attached a copy of his unanswered *Written Complaint* to the *Regular Grievance*. (ECF No. 22-1, at 55.)  The Institutional Ombudsman indicated that staff had "sent" the response to Prosha on June 29, 2021.  (ECF No. 22-1, at 54.)  The response to the *Written Complaint* is dated June 22, 2021, but does not indicate the date it was sent to Prosha.  (ECF No. 31-1, at 10.)

[16] Prosha attached a copy of his unanswered *Written Complaint* to the *Regular Grievance*. (ECF No. 22-1, at 37.)  The response to the *Written Complaint* is dated June 23, 2021, but does not indicate the date it was sent to Prosha.  (ECF No. 31-1, at 13.)

## IV.  Exhaustion Analysis

The pertinent statute provides: "No action shall be brought with respect to prison conditions under [42 U.S.C. § 1983] or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  This language "naturally requires a prisoner to exhaust the grievance procedures offered, whether or not the possible responses cover the specific relief the prisoner demands." *Booth v. Churner*, 532 U.S. 731, 738 (2001).  Generally, in order to satisfy the exhaustion requirement, an aggrieved party must file a grievance raising the claim and pursue the grievance through all available levels of appeal, prior to bringing his or her action to court. *See Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  The Supreme Court has instructed that section 1997e(a) "requires proper exhaustion." *Id.* at 93.  The Supreme Court explained that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules," *id.* at 90, "so that the agency addresses the issues on the merits." *Id.* (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)).  The applicable prison rules "define the boundaries of proper exhaustion." *Jones v. Bock*, 549 U.S. 199, 218 (2007).  Exhaustion is mandatory, and courts lack discretion to waive the exhaustion requirement. *Porter v. Nussle*, 534 U.S. 516, 524 (2002).

Nevertheless "an administrative remedy is not considered to have been available if a prisoner, through no fault of [their] own, was prevented from availing [themselves] of it." *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008) (citing *Aquilar–Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006)).  The Supreme Court has explained that an administrative remedy is considered unavailable when: (1) "it operates as a simple dead end—with officers unable or consistently unwilling to provide any

15

relief to aggrieved inmates"; (2) it is "so opaque that it becomes, practically speaking, incapable of use"; or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 643–44 (2016). The Supreme Court observed that, "[g]iven prisons' own incentives to maintain functioning remedial processes, we expect that these circumstances will not often arise." *Id.* at 643 (citing *Woodford*, 548 U.S., at 102).

"When an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." *Id.* at 644. The United States Court of Appeals for the Seventh Circuit quoted the foregoing language to conclude that, when "refiling" an initially defective grievance, "was available to [an inmate, the inmate's] failure to exhaust is not excusable." *Haywood v. Baylor*, 804 F. App'x 401, 403 (7th Cir. 2020) (citing *Kaba*, 458 F.3d at 684); *accord Wall v. Stevens*, No. 7:16–CV–00373, 2019 WL 1371858, at *4 (W.D. Va. Mar. 26, 2019), *aff'd*, 775 F. App'x 761 (4th Cir. 2019); *see Woodford*, 548 U.S. at 90 (emphasis added) (internal quotation marks omitted) (emphasizing that proper exhaustion entails "using *all* steps that the agency holds out"); *Wilson v. Jamrog*, No. 98–2281, 2000 WL 145455, at *2 (6th Cir. Feb. 1, 2000) (observing that inmate could have exhausted his claims "simply by following direction[s]").

Prosha failed to comply with the VDOC's procedural rules for the grievances he filed with respect to the denial of his claim about the denial of a bottom bunk. Those rules required that Prosha initially file a *Written Complaint* about the denial of a bottom bunk, await the staff's response to that complaint, and then attach the *Written Complaint* with the prison's staff response to the *Regular Grievance*. (*See* ECF No. 22-1, at 35 (emphasizing that the *Written Complaint* must contain the, **"Results of the Informal Complaint Process."** ) Prosha never

complied with this requirement. Nor did he avail himself of the opportunity to resubmit a *Regular Grievance* with the results of the informal complaint process. *See Nelson v. Ellis*, No. 3:20CV803, 2023 WL 2226790, at *9 (E.D. Va. Feb. 24, 2023) (observing that the rejection of an offender's grievance did not render the administrative process unavailable because the offender had ample opportunity resubmit the grievance in conformance with the pertinent procedural rules (citing *Haywood*, 804 F. App'x at 403)).

On three occasions, the Institutional Ombudsman rejected Prosha's *Regular Grievance* at intake because he deemed the *Regular Grievance* to be a request for services. (*See* ECF No. 22-1, at 36, 42, 48.) A request for services requires the offender to submit a proper request for services through the proper prison channels. *Rountree v. Clarke*, No. 7:11CV00572, 2014 WL 4923964, at *6 (W.D. Va. Mar. 24, 2014), *report and recommendation adopted in part, rejected in part sub nom. Rountree v. Clark*, No. 7:11CV00572, 2014 WL 4923163 (W.D. Va. Sept. 30, 2014). "Only then, if the request for services is denied, does [the offender] have the opportunity to pursue [the] claim through the informal complaint and regular grievance process." *Id.* There is no evidence that Prosha ever pursued a request for services that was denied and subsequently filed a *Written Complaint* and a *Regular Grievance*. Because Prosha failed to do so, his complaint was not addressed on its merits as is required for proper exhaustion. *Woodford*, 548 U.S. at 90 (emphasis in original) (explaining that an inmate must use administrative remedies "*properly* (so that the agency addresses the issues on the merits)."). The record therefore establishes that Prosha failed to comply with 42 U.S.C. § 1997e(a) and his claim against Lt. Coleman is not properly exhausted. For this reason, the Motion for Summary Judgment will be GRANTED and the action will be DISMISSED.

17

## VI.  Conclusion

Lt. Coleman's Motion for Summary Judgment (ECF No. 21) will be GRANTED.

Prosha's claims and the action will be DISMISSED.

An appropriate Final Order will accompany this Memorandum Opinion.

Date:  9-1-2023
Richmond, Virginia

/s/
M. Hannah Lauck
United States District Judge

18